Trevor Bradford, Utah Bar No. 10233
Jeff Holman, Utah Bar No.
INTELLECTUAL STRATEGIES
1371 North 1075 West, #6
Farmington, Utah 84025
Telephone: (801) 372-7703
E-mail:    trevor@intellectualstrategies.com
           Jeff@intellectualstrategies.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Pure Maintenance Holdings, LLC, *Plaintiff*, vs. Mold Zero Services, LLC, Mold Zero, LLC, and *Defendants*. | **VERIFIED COMPLAINT** Civil Case No.: Judge: |

Plaintiff Pure Maintenance Holdings, LLC, (hereinafter "Plaintiff," "Pure Maintenance," or "PM") hereby alleges and complains against Defendants as follows:

### NATURE OF THE ACTION

1. Defendants stole Plaintiff's intellectual property, among other nefarious actions.

2. Also, Defendants breached the contracts they had with Plaintiff, and Plaintiff obtained a judgment against Defendants for their egregious breaches of contract, which Judgment is attached to this Verified Complaint as **Exhibit 1**.

3. This action seeks injunctive relief (temporary restraining order, preliminary injunction, and/or permanent injunction), and damages for injury caused to Pure Maintenance by Defendants, together with attorneys' fees, costs, etc.

### PARTIES

4. Plaintiff Pure Maintenance, LLC is a Utah limited liability company with its principal place of business in Utah.

5. Upon information and belief, Defendant Mold Zero Services, LLC is California limited liability company.

6. Upon information and belief, Defendant Mold Zero, LLC is a Florida limited liability company.

## JURISDICTION & VENUE

7. This is a trademark infringement action, among other things, and this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

8. Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) insofar as these claims are so related to the federal claims in the action that they form part of the same case or controversy.

9. This Court has personal jurisdiction over the Defendants. There is multiple basis for this personal jurisdiction in Utah, including contracts made between the parties in Utah. Specifically, Mold Zero LLC entered into a March 2020 Agreement and an Amended License Agreement with Pure Maintenance here in Utah; Defendant Mold Zero Services entered into a Residential Licensing Agreement and Amended License Agreement with Pure Maintenance here in Utah. These contracts specify and Defendants have agreed that the United States District Court for the District of Utah is proper for personal jurisdiction. A true and correct image of the contract language is inserted below.

> 15.8  Agreement shall be governed by, and construed in accordance with, the law of the State of Utah. The United Nations Convention on Contracts for the International Sale of Goods will not apply to the interpretation or enforcement of this Agreement. The Parties hereto hereby consent irrevocably to the jurisdiction of the courts of the State of Utah in Davis County, and the United States District Court for the District of Utah, and waive any contention that any such court is an improper venue for enforcement of Agreement. The Parties may, but shall not be obligated to, mutually agree in writing to submit any

10. Also, this Court has personal jurisdiction over Defendants because Defendants have already submitted to the jurisdiction of Utah courts in a prior action, and Plaintiff has a judgment against Defendants here in Utah. *See* attached **Exhibit 1**.

11. In addition, this Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the laws of the State of Utah by knowingly and purposefully infringing, marketing, offering, and selling services to persons within the State of Utah; regularly transacting and conducting business within the State of Utah through contracts; publishing the defamatory statements, alleged below, to many thousands of individuals within the State of Utah; and otherwise making or establishing contacts within the State of Utah sufficient to permit the exercise of personal jurisdiction.

## GENERAL ALLEGATIONS

12. Defendants breached the contracts between the parties.

13. After that, Defendants stole Plaintiff Pure Maintenance's intellectual property.

14. Plaintiff Pure Maintenance offers clients a patented mold removal and remediation process.

15. In order to build a customer base and brand recognition, Plaintiff Pure Maintenance registered for and obtain service marks with the USPTO for their business, which touches and concerns its patented mold removal process, etc.

16. To help expand Pure Maintenance's business, Pure Maintenance developed and offers a franchise model wherein franchisee can license PM's patented process and lease PM's equipment.

17. Because of a series of contracts between Plaintiff Pure Maintenance and both Defendants Mold Zero and Mold Zero Services, those entities became licensees of Plaintiff Pure Maintenance.

***Defendants' Breaches of the Agreements, and subsequent Termination of Agreements***

18. Both Defendants have breached the contracts and are illegally using Plaintiff's intellectual property, as will be demonstrated conclusively in this Verified Complaint.

19. The agreements breached by Defendants include: (a) Amended and Restated License and Lease Agreement (the "Amended License Agreement") entered into between Pure Maintenance and <u>Mold Zero Services</u>; (b) Residential and Small Business Licensing Agreement (the "Residential Licensing Agreement") entered into between Pure Maintenance and <u>Mold Zero Services</u>; and (c) License and Lease Agreement ("March 2020 License Agreement") entered into between Pure Maintenance and <u>Mold Zero LLC</u>. The Amended License Agreement, Residential Licensing Agreement, and the March 2020 License Agreement shall be known, collectively, as the "Agreements."

20. Under the terms of the Agreements, Mold Zero Services and Mold Zero were granted certain licenses for use of the PM Brand names and remediation process, in exchange for payment of fees under the Agreements.

21. However, Defendants Mold Zero and Mold Zero Services failed to pay the license fees under the Agreements.

22. Once Mold Zero Services and Mold Zero LLC failed to pay, Pure Maintenance provided notice of the termination of the Agreements in March and April of 2023.

*Plaintiff's Judgment against Defendants*

23. In light of Defendants' breaches of these Agreements (with Plaintiff), including failing to make required payments under the Agreements, Plaintiff sued Defendants in Utah state court.

24. Plaintiff was successful in that lawsuit and has a judgment against Defendants. *See* "Judgment" attached **Exhibit 1**.

25. As noted above, under the terms of the Agreements, Defendants leased certain equipment to the Defendants. Defendants have been court-ordered to return that equipment, but have failed to do so. *See* "Judgment" attached as **Exhibit 1**: "(b) With entry of this Judgment, Defendants are ordered to return any remaining pieces of equipment that are owned by Plaintiff but have not yet been returned." (Emphasis added.)

26. Presently, Defendants, still have at least the following equipment in their possession (collectively, the "PM Equipment"), which is owned by Pure Maintenance:

    a. One (1) metal tanks/ Pure Maintenance Fogger Unit;

    b. One (1) Dual Hose (liquid and air); **and**

    c. Eighteen (18) Fog Head(s)/Nozzle(s).

27. Plaintiff know Defendants have this equipment in their possession because of photos/images on Defendant Mold Zero's social media page of Pure Maintenance's fogger.



4

*Defendants' attempts to Misappropriate Plaintiff's Intellectual Property*

28. Defendants have used Plaintiff's intellectual property without permission or authorization.

29. Plaintiff' owns certain service marks, which are federally registered service marks and on the USPTO's Principal Register (collectively "the Marks"). These Marks are: (i) **InstaPure®**; and (ii) **EverPure®**; and (iii) **Pure Maintenance®**.

30. Plaintiff has invested substantial resources and devoted significant energies in an effort to obtain and maintain its marks.

31. Defendants' infringing activities are both longstanding and current.

32. Recently, on or about May 20, 2025, Plaintiff learned that Defendants are still illegally using Plaintiff's Marks at a trade show. True and accurate image of Defendants' infringing activities are below and attached hereto as **Exhibit 3**.



5

33. On January 17, 2023, Defendants impermissibly used Plaintiff's marks InstaPure® and EverPure® in solicitations and advertisements published on the internet and social media platforms like Facebook and Instagram. True and accurate images of Defendants infringing activities are below and attached hereto as **Exhibit 3**.



34. Again, on January 23, 2023, Defendants impermissibly used Plaintiff's marks InstaPure® and EverPure® in solicitations and advertisements published on the internet and social media platforms like Facebook and Instagram. True and accurate images of Defendants infringing activities are below and attached hereto as **Exhibit 3**.



35. These images show that Defendants trade off and profit from the good name and reputation of Pure Maintenance®. True and accurate images of Defendants infringing activities are attached hereto as **Exhibit 3**.

36. Currently, Defendants are posting, on publicly available websites available to all Utahns, that they are "powered by Pure Maintenance" or "Pure Maintenance" approved, and holding themselves out as licensees of Pure Maintenance®, which is false, defamatory, and illegal. True and accurate images of Defendants infringing activities are attached hereto as **Exhibit 3**.

### *Defendants other Unlawful Acts*

37. Defendants' conduct is egregious considering Plaintiff's efforts help Defendants' businesses to succeed.

38. Among other things, Plaintiff Pure Maintenance helped Defendants:

    a. establish franchise territories; and

    b. create franchise marketing material.

39. Defendants have, however, misused and misappropriated those marketing materials in a way that is defamatory (untrue) and harms Pure Maintenance.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Defendants' Violations of 15 U.S.C. § 1125(a)(1)(A) aka Federal Trademark Infringement and Unfair Competition)

40. Plaintiff repeats and realleges each and every allegations set forth in the preceding paragraphs, as if fully set forth herein.

41. Plaintiff PM has federal trademark rights in their Marks. *See* attached **Exhibit 2**.

42. As mere licensees, Defendants never acquired ownership in the Pure Maintenance Marks.

> 9.1 Licensee acknowledges that the PM Brand Name, PM Remediation Process, PM Products, and PM Equipment, including software and hardware comprising the same ("PM Property"), incorporates valuable intellectual property rights of PM and that all such intellectual property rights, and all rights, titles, and interests in and to the PM Property, including software and hardware, documentation, and all derivatives, modifications, and enhancements of the aforementioned (including ownership of all copyrights and other intellectual property rights) are and at all times shall remain under the sole and exclusive ownership of PM, subject only to the rights expressly granted to the Licensee under this Agreement. This Agreement does not provide the Licensee with title or ownership of any of the PM Property, but only a limited right to use the same solely upon the terms expressly set forth in this Agreement.

43. Defendants had actual knowledge of Pure Maintenance's rights to the Marks, by reason of being a licensee of Pure Maintenance.

44. The Pure Maintenance Marks are inherently distinctive when used for cleaning services, such as mold removal and remediation.

45. By virtue of Pure Maintenance's advertising and promotional efforts, consumers' widespread exposure to products offered under the Pure Maintenance Marks, and sales

8

success of those products, the Pure Maintenance Marks also have acquired distinctiveness and are commercially strong source identifiers of and for Pure Maintenance's services.

46. Federal trademark law under the Lanham Act prohibits individuals or entities from activities "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *See* 15 U.S.C. § 1125(a)(1)(A).

47. The class of consumers/customers for the services offered by Defendants is substantially the same class of consumers/customers to whom Plaintiff Pure Maintenance offers its services.

48. Defendants intend to promote, and indeed have promoted, services similar to those of Plaintiff Pure Maintenance by illegally using the Pure Maintenance Marks. True and accurate photos of Defendants' infringing activities are attached hereto as **Exhibit 3**.

49. Defendants' use by Plaintiff's Marks is without the permission or authorization from Plaintiff Pure Maintenance.

50. In view of the substantially similar nature of the parties' services, the confusing similarity caused by the use of the same marks by the differing parties, and the substantially similar channels of trade and classes of purchasers of the parties' products, Defendants' continued use of Pure Maintenance's Marks has actually caused and is likely to cause confusion, mistake, and deception among purchasers and the public generally, leading them to believe, falsely, that Defendants' services are those of, sponsored or approved by, or in some way connected with Plaintiff Pure Maintenance to the irreparable injury of Pure Maintenance's trade and goodwill, and to the injury of the public.

51. On information and belief, Defendants' acts complained of herein have been in furtherance of their bad-faith scheme to willfully misappropriate Plaintiff Pure Maintenance's rights in the Marks and of the valuable goodwill of Pure Maintenance's business, thereby unlawfully benefitting Defendants.

52. The continued use of the Plaintiff Pure Maintenance's Marks by Defendants is likely to injure the business and reputation of Pure Maintenance, and will damage the distinctive quality of the Marks.

53. Defendants' use of the Pure Maintenance Marks is without Plaintiff's consent, and is likely to cause confusion, mistake, or deception and constitutes direct infringement of Pure Maintenance's federal mark rights, and federal unfair competition in the form of passing off, false association, and false designation of origin, all in direct violation of 15 U.S.C. § 1125(a).

54. Plaintiff Pure Maintenance is thus entitled to injunctive relief, including permanent relief, and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## SECOND CAUSE OF ACTION
**(Defendants' Violations of 15 U.S.C. § 1125(a)(1)(B) aka False Advertising)**

55. Plaintiff Pure Maintenance realleges and incorporates by reference the allegations of the preceding paragraphs.

56. Federal trademark law under the Lanham Act prohibits individuals or entities from: "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" in commercial advertising or promotion. *See* 15 U.S.C. § 1125(a)(1)(B).

57. Defendants commercial advertising, outlined in the foregoing paragraphs, runs afoul of this provision, by misrepresenting the characteristics and/or quality of the parties' services by falsely implied sponsorship, endorsement, or authorization to use Pure Maintenance's Marks, all to the irreparable injury of Pure Maintenance's reputation and goodwill, and to the injury of the public.

58. The aforesaid acts constitute federal false advertising in the form of false commercial representation, in direct violation of 15 U.S.C.§ 1125(a)(1)(B).

59. Plaintiff Pure Maintenance is thus entitled to injunctive relief, including permanent relief, and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## THIRD CAUSE OF ACTION
**(Defendants' Violations of Utah Code §13-5a-101, *et seq.*; State Law Unfair Competition)**

60. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

61. Defendants have violation Utah's "Unfair Competition Act," (§13-5a-101, *et seq.*) which violations have harmed Plaintiff Pure Maintenance.

62. As described herein, Defendants' wrongful acts constitute common law unfair competition in that said acts include:
    a. acts intending to obtain the benefit of and trade on Pure Maintenance's goodwill; **and**
    b. acts causing, have caused, and are likely to continue to cause confusion, mistake, or deception in the minds of the public respecting Pure Maintenance's Marks, among other things.

63. The aforesaid acts constitute unfair competition in direct violation of Utah law.

64. The aforesaid acts of Defendants are irreparably damaging Plaintiff and will continue to irreparably harm Plaintiff Pure Maintenance, including its goodwill.

65. Plaintiff Pure Maintenance is thus entitled to injunctive relief, including permanent relief, and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees.

66. Also, Plaintiff Pure Maintenance is entitled to recover actual damages, costs, attorney fees, and punitive damages to the full extent provided for by Utah law (*see* Utah Code §13-5a-103(1)(b) "In an action under this Subsection (1), a person injured by unfair competition may recover: (i) actual damages; (ii) costs and attorney fees; and (iii) if the court determines that the circumstances are appropriate, punitive damages.").

67. Therefore, this cause of action seeks injunctive relief, damages, and attorney fees from Defendants for its actions against Pure Maintenance in an amount to be proven later, including at trial.

**FOURTH CAUSE OF ACTION**
**(Defendants' Violations of Utah Code §13-24-1, *et seq.*, aka Misappropriation of Trade Secrets and Confidential Information)**

68. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69. Utah Code §13-24-1 is known as the Utah's "Uniform Trade Secrets Act," ("Trade Secrets Act").

70. Under the Trade Secrets Act, a "trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: "(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic

11

value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

71. Under that law, and the contracts between the parties, Plaintiff Pure Maintenance is protected from misappropriation of trade secrets, among other protections.

72. Defendants, by reason of being licensees of Pure Maintenance, Defendants gained access to Plaintiff's proprietary trade secrets and confidential information. *See* attached as **Exhibit 4**, and images below.

> **10. Proprietary Information.** All financial, sales, marketing or other information disclosed by PM to Licensee as a consequence of Licensee's relationship with PM shall be treated by Licensee as PM trade secrets and shall not be disclosed by Licensee to any other person, firm or entity, during the term of this Agreement or thereafter, without the prior written consent of PM, except to the extent that such information is in the public domain at the time of its disclosure to Licensee or thereafter becomes in the public domain through no fault of Licensee. All information submitted and provided by end user customers in connection with the Products shall be considered proprietary and owned by PM. Such information is confidential and shall not be utilized or otherwise disclosed by Licensee. All proprietary, confidential information and Company Materials are protected by copyright, trademark and other intellectual property laws. Licensee agrees not to reproduce, adapt, disseminate, sell, distribute or commercially exploit any proprietary or confidential information of PM in any manner. These confidentiality obligations shall survive termination or expiration of this Agreement.
>
> 10.1   The term "Confidential Information" refers to any information or materials that are proprietary to PM, whether or not owned or developed by PM, and which the Licensee may obtain through any direct or indirect contact with PM or the PM Property.
>
> 10.2   Regardless of whether specifically identified as confidential or proprietary, "Confidential Information" shall include the PM Property and any information provided by PM concerning the PM Property, and the business, technology, and information of PM and any third party with which PM deals, including, without limitation, processes, business records and plans, trade secrets, technical data, product ideas, contracts, financial information, pricing structure, discounts, computer programs and listings, source code, object code, copyrights and intellectual property, inventions, sales leads, strategic alliances, partners, client lists, and any other information the nature of which and the manner of the disclosure are such that a reasonable person would understand it to be confidential.

73. Under the agreements between the parties, Defendants gained access Plaintiff's proprietary and confidential information; gained access to Plaintiff's trade secret information.

74. Defendants violated that Trade Secrets Act and breached the contracts when they offered as a service and disclosed trade secret information to their customers. Specifically, Defendants disclosed to customers Pure Maintenance's method, technique, or process, that has independent economic value (from not being generally known to and not being readily ascertainable by proper means) that Pure Maintenance took reasonable efforts (under the circumstances) to maintain its secrecy."

75. Furthermore, Plaintiff Pure Maintenance is informed and believes that the action(s) of Defendants were undertaken willfully and maliciously. Accordingly, Pure Maintenance is

entitled to and seeks/requests exemplary damages and attorneys' fees pursuant to Utah Code §13-24-4(2) and §13-24-5.

76. Thus, Plaintiff Pure Maintenance is entitled to permanent injunctive relief, and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees.

77. Accordingly, this cause of action seeks damages and attorney fees from Defendants for its actions against Pure Maintenance in an amount to be proven later, including at trial.

### FIFTH CAUSE OF ACTION
(Defamation)

78. Plaintiff Pure Maintenance realleges and incorporates by reference the allegations of the preceding paragraphs.

79. Defendants intentionally published false and defamatory statements that have injured Pure Maintenance's professional reputation and pursuit of its business.

80. Specifically, in public statements, Defendants accused Pure Maintenance of unethical and unprofessional conduct, including breach of contract such as not having proper quality control procedures in place, etc.

81. The defamatory statements were made, published, or personally authorized by the Defendants.

82. Defendants made the false and defamatory statements with actual malice. The statements were motivated by ill will, and Defendants actually knew the statements were false at the time they made them or made the statements with reckless disregard for their truth or falsity.

83. As a proximate result of the false and defamatory statements made by Defendants, Pure Maintenance has suffered injury to its business and professional reputation, in an amount to be proven later, including at trial. Because Defendants acted with actual malice, Pure Maintenance is also entitled to recover punitive damages from Defendants in an amount to be proven later, including at trial.

84. Therefore, this cause of action seeks damages from Defendants for its actions against Plaintiff Pure Maintenance in an amount to be proven later, including at trial.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

85. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

86. To the extent Defendants have damaged Pure Maintenance in a way that is beyond the scope of the contracts between the parties, Pure Maintenance seeks compensation for those damages under this Complaint.

87. Therefore, this cause of action seeks damages from Defendants for its actions against Plaintiff Pure Maintenance in an amount to be proven later, including at trial.

## SEVENTH CAUSE OF ACTION
### (Rule 70--Enforcing a Judgment)

88. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

89. As stated above, Plaintiff has a judgment against the Defendants. *See* attached **Exhibit 1**.

90. The judgment requires Defendants to "return any remaining pieces of equipment that are owned by Plaintiff but have not yet been returned," which is a judgment that requires Defendants to perform a "specific act," but Defendants have failed to comply. Thus, as authorized by Rule 70 of the *Federal Rules of Civil Procedure,* this Court may order the act to be done at the disobedient party's expense e.g., "return any remaining pieces of equipment that are owned by Plaintiff."

91. In addition, this cause of action seeks damages from Defendants for their failure to comply with the Judgment of the Utah court, in an amount to be proven later, including at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pure Maintenance prays for judgment in its favor against Defendants on each and every cause of action (set forth above), and award it relief as follows (among other relief):

A. That this Court order Defendants and their officers, affiliate companies, agents, servants, employees, successors, licensees, and assigns, and all others in concert or privity with them, be enjoined permanently from:

  i. using the Pure Maintenance Marks, any variation of the Pure Maintenance designation, or any mark that is confusingly similar to any of Plaintiff's Marks in connection with similar services to Plaintiff, and other related goods and services,

    including on Defendants' websites, social media sites, third-party websites, letterhead, signage, advertising, or promotional material, either in print or broadcast or electronic form or other forms either separately or compositely with other words, symbols or devices; and

  ii. in any manner imitating Plaintiff's Marks, for the purpose of acquiring Plaintiff's trade and goodwill by imitation, fraud, mistake, or deception;

B. That Defendants be ordered to immediately cease offering services and marketing of any services referencing InstaPure®, EverPure®, and/or Pure Maintenance®;

C. That Defendants be ordered to immediately cease use of any websites infringing the Pure Maintenance Marks, including <https://moldzerollc.com> and https://moldzero.com;

D. That Defendants be ordered to transfer any other digital or physical asserts currently or previously associated with Pure Maintenance to Plaintiff;

E. That Defendants be prohibited from USPTO filings and registrations similar to the Pure Maintenance Marks;

F. That Defendants be ordered to:

  i. immediately and publicly issue corrective advertising to cure the confusion created in the marketplace by disclaiming, in writing, any association between Defendants and Pure Maintenance; and

  ii. immediately and publicly retract the false and/or defamatory statements that Defendants circulated;

G. For exemplary and/or punitive damages;

H. That Defendants be ordered to pay compensatory, punitive, and enhanced damages, as well as Pure Maintenance's attorneys' fees and costs, as demanded in the Causes of Action set forth above;

I. For reasonable attorneys' fees and costs as provided for by law (contracts and/or statutes);

J. That this Court deem Defendants' conduct "exceptional" and award Pure Maintenance its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a);

K. For pre- and post-judgment interest at the maximum rate allowed by law (contracts and/or statutes);

L. That Defendants be ordered to pay prejudgment interest on the foregoing relief;

M. For a temporary restraining order, preliminary injunction, and/or permanent injunctive relief; and

N. For such other relief as the Court deems just and equitable.

Dated: July 31, 2025.

                          INTELLECTUAL STRATEGIES

            By:    /s/ Trevor Bradford
                    _____
                    Trevor A. Bradford, *J.D.*
                    Jeff Holman, *J.D.*
                    *Attorneys for Plaintiff*

## VERIFICATION

I, BRANDON ADAMS, am the Chief Executive Officer ("CEO") of Plaintiff Pure Maintenance Holdings, LLC. I have read the foregoing Verified Complaint. To the best of my knowledge, information, and belief, the allegations in the Verified Complaint are true and accurate as of the date below.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2025.

Brandon Adams
(Signature)